UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CRAIG CROSS,

                Plaintiff,

v.                                   Case No. 3:25-cv-763-MMH-PDB

LT. S. HOTT, et al.,

                Defendants.

_____

## <u>ORDER OF DISMISSAL WITHOUT PREJUDICE</u>

Plaintiff, Craig Cross, who is currently housed at Okaloosa Correctional Institution, is proceeding on a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1; Complaint). He also filed a request to proceed as a pauper (Doc. 2). In the Complaint, Cross names the following individuals as Defendants: (1) Lt. S. Hott; (2) Mr. Brown; (3) Ms. Moore; (4) Mr. B.V. Reddish; and (5) Department of Corrections Inmate Greivance Appeal Agency. <u>See</u> Complaint at 2-3. Cross sues each Defendant in his/her/its individual and official capacities. <u>See</u> <u>id.</u>

Cross alleges that while housed at Union Correctional Institution, he was "falsely accus[]ed" of various infractions resulting in disciplinary reports (DR(s)) on September 14, 2024; January 30, 2025; and March 29, 2025. <u>See</u> <u>id.</u>

at 5; <u>see also</u> Doc. 1-1 at 2; Doc. 1-2 at 2; Doc. 1-3 at 2. Defendant Hott authored the September 14, 2024 disciplinary report, which alleged that Cross "made inappropriate physical contact with Aramark employee C. Parker by grabbing her hair and smelling it[.]" Doc. 1-1 at 2. Ms. Parker "verbally stated to [Hott] that inmate Cross had grabbed her hair and smelled it, because she and the inmate were conversing about natural and artificial hair." <u>Id.</u> During Hott's investigation of the claim, Cross "verbally admitted to having the conversation, as well as admitting to having 'briefly' touched Ms. Parker's hair." <u>Id.</u> Cross was found guilty of the infraction and received 60 days in disciplinary confinement along with a 6-month visitation suspension. <u>Id.</u> at 4-5.

Cross received the second DR on January 30, 2025. Doc. 1-2 at 2. The statement of facts in the DR show that an officer observed Cross "standing near the sink in his assigned cell, swaying back and forth." <u>Id.</u> The officer explained that when he spoke to Cross, Cross "had bloodshot eyes and slurred speech" and he "appeared to be under the influence of an unknown mind-altering substance." <u>Id.</u> The DR hearing team found Cross guilty based "on the written statement and direct observation of" the reporting officer. <u>Id.</u> at 3. Cross received 60 days in disciplinary confinement and a 1-year visitation suspension. <u>Id.</u> at 3-4.

Then, on March 29, 2025, Cross received the third disciplinary report, alleging that he was "standing up, struggling to keep his balance," and he had "slurred speech" and "blood shot eyes." Doc. 1-3 at 2. According to the statement of facts in the DR, Cross "appeared to be under the influence of an unknown mind-altering substance." Id. The DR hearing team found Cross guilty based "on the written statement" of the reporting officer. Id. at 3. Cross received 60 days in disciplinary confinement. Id.

In the Complaint, Cross contends that Defendants Hott, Brown, and Moore were "wrong" for failing to review the audio and video recordings of the alleged incidents leading to his DRs. See Complaint at 14; see also id. at 12. As to Defendant Reddish, Cross asserts that he submitted multiple grievances to Reddish, which placed Reddish on notice of the "negligence" occurring with respect to the audio and video recordings, but Reddish failed to correct the violations. See id. at 14-15; see also id. at 12. Similarly, Cross asserts that the Inmate Greivance Appeals Agency failed to review the audio and video evidence and simply relied on the responses to his informal and formal grievances. See id. at 15; see also id. at 12-13. As relief, Cross seeks $1 million from each Defendant. Id. at 5. He also requests that the three DRs be overturned. Id.

3

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same standard in both contexts.[1] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, under Eleventh Circuit precedent, to prevail in

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While not

required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u>

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (alternation and internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 679. In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

In assessing the Complaint, the Court must read Cross's pro se allegations in a liberal fashion. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Bingham</u>, 654 F.3d at 1175. And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as <u>de facto</u>

counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[2] (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

Here, Cross's Complaint is due to be dismissed for the following reasons. First, Cross does not have a constitutional right to be free from allegedly false accusations by prison officials, and he may not seek to overturn a DR in a civil rights action or obtain monetary damages stemming from a DR that has not been overturned. <u>See</u> <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—<u>if</u> success in that action would necessarily demonstrate the invalidity of confinement or its duration."); <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997) ("[A] claim for declaratory relief and money damages, based on

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

allegations . . . that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."); see also Wagner v. Smith, No. 5:06-cv-11-MCR-EMT, 2006 WL 2482782, at *3 (N.D. Fla. Aug. 25, 2006) ("[T]he filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation.").[3]

Second, Cross sues each Defendant in his/her/its individual and official capacities, but Cross fails to state an official capacity claim against any Defendant. If an officer is sued under § 1983 in an official capacity, the claim is considered a claim against the entity for which the officer is an agent. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Thus, suing Defendants in their official capacities is equivalent to suing the Florida Department of Corrections (FDOC), but the FDOC is not a "person" within the meaning of § 1983. Gardner v. Riska, 444 F. App'x 353, 355 (11th Cir. 2011). Moreover, the FDOC is immune from § 1983 liability for damages. Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). Although injunctive relief may be available against the FDOC, Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d

---

[3] Although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

1509, 1511 (11th Cir. 1986), Cross fails to allege that a FDOC custom, policy, or practice caused any violation of his rights. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks and citations omitted)). Therefore, all official capacity claims are due to be dismissed.

Third, Cross is not entitled to compensatory damages against Defendants in their individual capacities. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert a physical injury that is more than de minimis. Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015). Cross does not allege that he suffered any physical injury. Thus, to the extent Cross requests compensatory damages, his request will be dismissed.

Fourth, to the extent Cross claims that any Defendant denied him due process during his disciplinary proceedings, he fails to state a claim. Courts "examine procedural due process questions in two steps." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). First, the court

"asks whether there exists a liberty or property interest which has been interfered with by the [s]tate[;]" and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." <u>Id.</u> The Supreme Court has held the imposition of disciplinary confinement does not trigger due process protections. <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995) ("[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); <u>see also</u> <u>Woodson v. Whitehead</u>, 673 F. App'x 931, 933 (11th Cir. 2016) ("The Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated.").

Notably, Cross does not allege his disciplinary confinement resulting from the subject DRs affected the duration of his sentence. For instance, Cross does not allege in his Complaint, and his exhibits do not reflect, that he lost gain time as a result of these three DRs.[4] And Cross asserts no facts suggesting he faced conditions so severe that they imposed on him an atypical and

---

[4] In fact, because Cross is serving a life sentence, he is not eligible for gain time. <u>See</u> Fla. Admin. Code. r. 33-603.402(1)(a)(5) ("No inmate shall be eligible to receive or accumulate basic gain time . . . [i]f serving a sentence with no definite term, that is, a life sentence or death sentence[.]"); <u>see also</u> <u>McKire v. Sec'y, DOC</u>, No. 2:10-cv-388-FTM-99, 2013 WL 1410367, at *4 (M.D. Fla. Apr. 8, 2013) ("[U]nder Florida law an inmate serving a life sentence is not eligible to earn gain time, or incentive gain time.").

significant hardship in comparison to the ordinary incidents of prison life. <u>See</u> <u>Sandin</u>, 515 U.S. at 484. Thus, Cross's allegations, accepted as true, fail to show a denial of due process under the Fourteenth Amendment, and any due process claim is due to be dismissed. <u>See</u> <u>Smith v. Deemer</u>, 641 F. App'x 865, 867, 868 (11th Cir. 2016) (holding that the district court properly dismissed the plaintiff's due process claim because the disciplinary hearing did not result in a loss of good time credits and plaintiff did not allege his term of disciplinary confinement exposed him to atypical and significant hardship).

Fifth, to the extent Cross asserts that Defendant Reddish and the individuals who represent the Inmate Grievance Appeal Agency violated his constitutional rights by failing to adequately address his grievances, he fails to state a claim. Not addressing a grievance in the manner a prisoner would like, without more, does not render an individual liable for the underlying constitutional violation. <u>See</u> <u>Jones v. Eckloff</u>, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)).

There are circumstances in which a defendant's failure to act in response to an inmate's grievances may result in a constitutional violation. <u>See</u> <u>Goebert</u>

v. Lee Cnty., 510 F.3d 1312, 1327-29 (11th Cir. 2007) (finding that a defendant's lack of action in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the defendant's deliberate indifference may have caused the inmate's injury). In Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." Id. at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit noted that the inmate's written complaint contained sufficient information to provide the defendant with subjective knowledge of her serious medical need, and his failure to take action in response to her complaint because he did not believe her amounted to deliberate indifference. Id. at 1327-28.

But the facts of this case are distinguishable from those in Goebert. The defendant in Goebert completely disregarded his duty to investigate the inmate's "self-evident" and time-sensitive serious medical complaints because he "automatically disbelieve[d] all inmate statements about medical care." Id. at 1328, 1329. Here, the grievance responses reflect that Cross's allegations were considered and addressed; Cross simply disagrees with those assessments. But his disagreement does not rise to the level of a constitutional violation.

Moreover, inmates have "no constitutionally protected liberty interest in access to the prison's grievance procedure." Moore v. McLaughlin, 569 F. App'x 656, 659 (11th Cir. 2014) (citing Bingham, 654 F.3d at 1177; Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)); see Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 895 (11th Cir. 2015) (finding the district court did not err in dismissing the plaintiff's claim that the defendants "had violated his constitutional due-process rights by failing to take corrective action during the appeal of the suspension of his visitation privileges[ b]ecause the prison grievance procedure does not create a protected liberty interest"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (finding the plaintiff failed to state a claim because he merely "alleged that his prison grievances were either ignored or wrongly decided or that prison officials did not properly follow the

prison's own grievance procedures"). Thus, to the extent Cross alleges that Defendants denied him due process in the grievance procedure, such allegations fail to state a claim.

In light of the foregoing, this case will be dismissed without prejudice for Cross's failure to state a claim. Cross may refile his claims under 42 U.S.C. § 1983 with factual allegations sufficient to support a claim for relief if he elects to do so. Notably, pro se litigants are subject to the same law and rules of court that govern other litigants who are represented by counsel. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). All filings with the Court must be made in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

Accordingly, it is

**ORDERED**:

1.    This case is **DISMISSED without prejudice**.

2.    The **Clerk of Court** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

3.    The **Clerk of Court** shall send Cross a civil rights complaint form and an application to proceed in forma pauperis (prisoner filings) form. If Cross chooses to refile his claims, he may complete and file the appropriate forms. He should not include this case number on any form, as the Clerk will assign

a new case number upon receipt. In initiating such a case, Cross should either file a fully completed application to proceed in forma pauperis or pay the $405 filing fee.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of September, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

JAX-3 9/15
c:
Craig Cross, #083510

15